Filed 12/24/24 Shallbetter v. Nono CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| ALETHEA SHALLBETTER,<br><br>        Petitioner and Respondent,<br><br>        v.<br><br>GHASSAN NONO,<br><br>        Respondent and Appellant. | B331998<br><br>Los Angeles County<br>Super. Ct. No. 22PSRO02202 |
| GHASSAN NONO,<br><br>        Petitioner and Appellant,<br><br>        v.<br><br>ALETHEA SHALLBETTER,<br><br>        Respondent. | B335372<br><br>Los Angeles County<br>Super. Ct. No. 23STRO06116 |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa R. Washington and Melissa C. Lyons, Judges. Affirmed.

Ghassan Nono, in pro per., for Respondent and Appellant.

Kendall Gkikas & Mitchell and Brian Mitchell for Petitioner and Respondent Alethea Shallbetter.

_____

These two appeals arise from an ongoing dispute between neighbors Ghassan Nono and Alethea Shallbetter.  In B331998, Nono appealed the trial court's January 2023 order granting Shallbetter's request for a five-year civil harassment restraining order against him.  In B335372, Nono appealed the trial court's October 2023 order denying his request for a civil harassment restraining order against Shallbetter.  We consolidated the appeals and we affirm.  Statutory citations refer to the Code of Civil Procedure.

I

The clash escalated after the dog kept barking.

A

In 2020, Nono and his elderly mother moved into the house next to Shallbetter, a woman in her sixties who lived alone. Initially, Nono and Shallbetter enjoyed a cordial relationship. Then the parties sought civil harassment restraining orders against each other.

Nono's pets include a parrot, rescue cats, and a young dog named Bobey.  Nono described Bobey as "our main source of emotional support in our home."

According to Shallbetter, Bobey barked incessantly while Nono was away for work.  As a flight attendant, Nono could be gone for days at a time.   Shallbetter would notify Nono whenever

2

she heard Bobey barking, and he would thank her for letting him know.

In June 2022, Shallbetter texted Nono that Bobey "has been barking for [two and a half hours] . . . he's punched out part of the screen in front of your house because both front windows are open!  Please send someone over to help him since he is totally stressed out and he could get out if he gets through that window."

This time, unlike before, Nono responded: "You keep harassing me and my family about my animals….don't ever text here . . . ."  Nono told Shallbetter to "fuck off."

In July 2022, Shallbetter went to Nono's home to ask if he wanted any of her leftover lattice for his garden, as Nono had previously asked her for this lattice via text message.  Nono declined the lattice and asked Shallbetter to leave him and his family alone.  He followed up with this text message:  "Don't ever knock on my door again.  We do not want you in [our] property at all . . . ."

Shallbetter responded:  "I do not know why you are so angry with me for almost 2 months now when I was just trying to help [Bobey] . . . ."

Nono wrote back:  "I hate people who don't tell the truth. Bobey never barked for 3 hrs.  I asked all the neighbors and all said 30 minutes was the max and they were fine with it.  You lied and played dumb about it. . . am very upset that you lied . . . ." He also accused Shallbetter of having "no morals" and again, told her to "fuck off."

Shallbetter continued to hear Bobey barking, but did not contact Nono because he had asked her to leave him alone.

3

Instead, she contacted the animal control services agency about Bobey's barking.

A few months later, on November 15, 2022, Shallbetter was talking with her pool contractor Clint Raina on speakerphone while she was driving home. She arrived home at about 5:30 p.m., pulled into her driveway, and stayed in her car to continue the conversation.

Nono, his mother, and a neighbor named Linda Zych were in front of Nono's home when Shallbetter arrived. When he saw Shallbetter, Nono came to the passenger side window of Shallbetter's car. Shallbetter rolled down the window, and Nono, a 175-pound man in his forties, began to yell at her and repeatedly called her a "fucking bitch." Nono demanded that Shallbetter remove a potted palm tree from his property. Shallbetter remained in her car because she was frightened by Nono's behavior. Nono then rotated the potted palm tree himself, and returned to Shallbetter's car, where he continued to scream obscenities at her, including calling her a "fucking bitch" and a "slut."

Raina, who was still on speakerphone, could hear Nono shouting at Shallbetter. Raina described the yelling as "just kind of alarming, kind of vulgar." Raina asked Shallbetter if she wanted him to call the cops, but Shallbetter said no, she only wanted him to stay on the phone with her. She told Raina that it was her neighbor yelling at her. Raina was concerned for Shallbetter's safety because of Nono's angry tone and words. Raina heard Nono yelling at Shallbetter for about five minutes.

Zych and a few other neighbors approached Nono and tried to calm him down. Zych told Nono to go inside his house, and walked him to his door.

4

When she saw that Nono had gone inside his house, Shallbetter left her car and went inside her house. By now, Shallbetter was "shaking inside" and concerned for her personal safety.

Two days later, Shallbetter filed a report of this incident with the local police department. She also installed security cameras on her property.

Shallbetter then filed a request for a civil harassment restraining order. On the same day that Shallbetter filed the request, the court granted her a temporary restraining order.

In January 2023, the court held a hearing on Shallbetter's request. Nono, Shallbetter, Zych, and Raina testified. The court granted Shallbetter's request and issued an order of protection for Shallbetter for a five-year period. The court ordered that Nono remain at least five yards from Shallbetter, her property, her workplace, and her car.

B

In June 2023, Nono filed a notice of intent to move for a new trial. He argued Shallbetter's evidence was insufficient to show "a knowing and willful course of conduct" that would "cause a reasonable person to suffer substantial emotional distress" as required by section 527.6, subsection (b). This evidence consisted of hostile text messages in June and July 2022, and the November 15, 2022 incident of Nono yelling at Shallbetter in her driveway.

In July 2023, the court heard and denied Nono's motion. Citing *Russell v. Douvan* (2003) 112 Cal.App.4th 399, 400 (*Russell*) and *Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 487 (*Harris*), the court ruled it was within its discretion to issue the restraining order based on "a single act of unlawful violence

5

or a single credible threat of violence . . . where there is a likelihood of recurrence."  The court found Nono's conduct on November 15, 2022—yelling, cursing, approaching Shallbetter's car multiple times, and moving her personal property—to constitute a credible threat of violence that would place any reasonable person in fear of their safety.  The court observed that, because Nono and Shallbetter were neighbors, there was a likelihood of future harm.

The court said "it was a solid ruling.  It will remain.  And the court is denying the request for a new trial as there is no basis for a new trial."

Nono filed his first notice of appeal.

C

In March 2023, Shallbetter parked her car by the sidewalk in front of Nono's house.  Nono called the police department to express his fear that Shallbetter had parked close to his home to induce him to violate the restraining order.  A police officer told Nono he would speak to Shallbetter "in order to keep the peace and sustain a civil agreement."

Shallbetter told the police officer she had parked on the street in front of Nono's house because she had workers at her property, who had parked in her driveway and in front of her house.  She agreed to avoid parking in front of Nono's home "where and when possible without sacrificing convenience."

Then, on two occasions in September 2023, Shallbetter's pool workers parked in front of Nono's driveway.

The first time, Nono claimed the workers' truck blocked his driveway, preventing him from leaving for work.  When Nono asked the workers to move the truck, the worker declined to do

so.  Nono admitted, however, that he did not know if Shallbetter had directed the workers to park the truck this way.

On the second occasion, the pool workers parked a large truck in front of Nono's driveway.  Nono was not home at this time, but his mother called him to tell him his sister was unable to come into their home because of the truck.  Nono believed Shallbetter was trying to intimidate him, but admitted he did not know whether Shallbetter had instructed the workers not to move the truck and block his driveway.

Nono filed a request for a civil harassment restraining order the day after the second occasion involving Shallbetter's construction workers.  The court declined to issue a temporary restraining order for Nono against Shallbetter, but set the request for hearing in October 2023.  After Nono testified, the court found he did not sustain his burden of proof and denied his request for a restraining order.

Nono filed his second notice of appeal.

II

We affirm across the board.  Nono has not demonstrated trial court error.  (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*).)

As Shallbetter points out, Nono mostly failed to comply with the basic rules of appellate procedure, which require that he present argument with citations to applicable law and to pertinent portions of the record.  (*Jameson, supra*, at pp. 608–609.)  Self-represented litigants are bound to the same rules as any other party appearing before us.  (See *L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620.)

We discern two cognizable arguments in Nono's briefing. The first is the contention the trial court erred in finding his

conduct towards Shallbetter justified granting Shallbetter's request for a restraining order. The second is that the trial court erred in denying his request for a restraining order against Shallbetter.

Nono's first argument faults the trial court (1) for finding his conduct constituted a "credible threat of violence" within the meaning of section 527.6 and (2) for denying his motion for a new trial. The second order is not separately appealable but is subsumed in our review of the January 2023 order. (See *Quantum Cooking Concepts, Inc. v. LV Associates, Inc.* (2011) 197 Cal.App.4th 927, 930, fn. 4.)

We deferentially review the trial court's decision to grant a restraining order under section 527.6 and will affirm if substantial evidence supports this decision. (*Harris*, *supra*, 248 Cal.App.4th at p. 497.)

Substantial evidence supports the trial court's finding that Nono's conduct amounted to a "credible threat of violence" under section 527.6, subsection (b)(2). We defer to the trial court's finding that Shallbetter was a credible witness. (See *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011–1012.) Shallbetter, corroborated by Zych, Raina, and Nono himself, testified that Nono approached her and yelled vulgar insults at her for several minutes. This is sufficient for a finding under section 527.6, subsection (b)(2). (See *Harris*, 248 Cal.App.4th at p. 498 ["there is sufficient evidence to conclude that Stampolis's gestures and actions that day–such as placing his hands close to Harris, raising his voice, pointing and gesturing, and walking back and forth toward her–as a whole constituted a credible threat of violence"].) Objectively, a woman in her sixties living alone would reasonably entertain fear of a 175-pound man in his

8

forties who sent vulgar text messages, verbally assaulted her, and physically approached her in a state of rage.  The fact that Nono and Shallbetter own homes next to each other supports the court's finding that Nono was likely to harass Shallbetter again in the absence of a court order.  (See *Russell, supra*, 112 Cal.App.4th at p. 404 [a court may find circumstances justify the issuance of a restraining order even if there was only one instance of unlawful violence].)  We therefore affirm the court's decision to grant Shallbetter's request and deny Nono's motion.

Nono's second argument attacks the trial court's October 2023 order denying his request for a restraining order against Shallbetter.  The denial of a request for a restraining order under section 527.6 turns on a failure of proof.  (See § 527.6, subd. (i).)  When reviewing these orders, the question on appeal becomes whether the evidence compels a finding in favor of the appellant as a matter of law.  (See, e.g.*, In re Luis H.* (2017) 14 Cal.App.5th 1223, 1227.)  Reversing this order would require us to find Nono's evidence to be "uncontroverted and unimpeached" and "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."  (See *ibid.*)

Nono's evidence does not compel a finding in his favor.  He testified that Shallbetter parked in front of his home on one occasion, and that her workers twice blocked his driveway for no longer than a few hours.  This conduct would not cause "a reasonable person to suffer substantial emotional distress," as required by section 527.6.  (See *Schild v. Rubin* (1991) 232 Cal.App.3d 755, 763 ["A reasonable person must expect to suffer and submit to some inconveniences and annoyances from the

reasonable use of property by neighbors"].)  The court did not err in denying Nono's request.

## DISPOSITION

We affirm the trial court orders and award costs to Shallbetter.



WILEY, J.

We concur:


STRATTON, P. J.


VIRAMONTES, J.